# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>JACOB HARDING-ABEYTA<br><br>*Defendant(s)* | )<br>)<br>)  Case No.   2:21-mj-0094 KJN<br>)<br>)<br>)<br>) |

**FILED**
Jun 07, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __October 7, 2020__ in the county of __Solano__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) | Felon in possession of a firearm |

This criminal complaint is based on these facts:

See Affidavit of Detective Dalton Ryken, attached hereto and incorporated by reference.

☒ Continued on the attached sheet.

/s/ Dalton Ryken
*Complainant's signature*

Dalton Ryken, Detective, Solano County Sheriff's Office
*Printed name and title*

Sworn to me and signed via telephone.

Date:   June 7, 2021

*Judge's signature*

City and state:   Sacramento, California         Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Dalton C. Ryken, a detective with the Solano County Sherriff's Office, being duly sworn, state:

1. I am submitting this affidavit in support of my request for the issuance of a criminal complaint and arrest warrant against Jacob Harding-Abeyta for violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm. The facts establishing probable cause that HARDING-ABEYTA committed this crime are set forth more fully below.

## I. INTRODUCTION AND AGENT BACKGROUND

2. I am currently employed by the Solano County Sheriff's Office and have been since September of 2014. I am currently assigned as a Detective (Task Force Officer) with the FBI Solano County Violent Crime Task Force (SCVCTF). I will be officially deputized as a Task Force Officer for the FBI in the coming weeks.

3. My responsibilities include investigations pertaining to violent offenders and/or violent organizations. These investigations frequently involve the possession and possession for sale of controlled substances and firearms.

4. I have attended a six-month basic police officer academy at the Napa Valley Police Academy in Napa, California. This training included over 20 hours of specialized training in controlled substances which also included, but was not limited to, controlled substance identification, packaging, distribution, influence, and characteristics of use. I have arrested or assisted with the arrest of persons for possession of cocaine, cocaine base, crystal methamphetamine, marijuana, heroin and ecstasy. I have contacted no less than 250 people who have been arrested for possession of controlled substance(s), possession for sale of controlled substances, and/or firearms possession.

5. I have been deemed an expert in possession of methamphetamine for sale and have testified as an expert in possession for sale cases. I was previously assigned to the Sheriff's Enforcement Team (SET). SET's responsibility and mission is the apprehension of fugitives and confirming the compliance of individuals on supervised release. During my time on SET, I conducted numerous controlled substance and firearms investigations. I have authored and served various search warrants pertaining to controlled substances, firearms, stolen property, etc. I have worked with various bureaus within the Sheriff's Office as well as various federal and state law enforcement agencies involving the

investigations of various crimes.

6. Previously, while employed as a Deputy Sheriff, I was assigned to the Solano County Sheriff's Office Patrol Bureau for a total of four years. During this time, I have made hundreds of arrests, conducted and participated in over a thousand criminal investigations relating to, but not limited to, homicides, assaults, domestic violence, burglaries, thefts, sexual assaults, stolen vehicles, possession of controlled substances for sale, firearms possession and missing persons. These investigations consisted of interviewing witnesses, victims, and possible leads; locating and gathering evidence; apprehending criminal suspects and violators of the law; preparing and processing all necessary reports, and testifying as a witness in court. I have spent most of his time assigned to the Sheriff Office's Patrol Bureau as a Field Training Officer, where I was involved in the training of over 10 probationary Deputy Sheriffs. This training included the teaching of criminal law, case law, criminal procedures, traffic enforcement and investigative techniques. On numerous occasions, I was placed in charge of other Deputy Sheriffs as they were engaged in patrol level law enforcement operations.

7. I have participated in discussion and informal training sessions with more experienced controlled substance agents regarding the methods used by controlled substance manufacturers, traffickers, and users. I regularly read controlled substance related literature to remain abreast of contemporary topics. I have spoken with individuals who have admitted possessing controlled substance(s) for sale and /or personal use. These individuals have discussed how controlled substances are packaged when possessed for personal use as well as when they are possessed for sale. These individuals have talked about methods used when transporting controlled substances as well.

8. Prior to becoming a Deputy Sheriff, I graduated from California State University Sacramento in 2012 with a Bachelor's of Science Degree in Criminal Justice. During the course of my studies, I attended and completed courses in relation to criminal investigation of offenses including crimes against persons, crimes against property, narcotics, gangs and firearms related offenses.

## II. PROBABLE CAUSE

9. On September 29 and 30, 2020 the Solano County Sheriff's Office responded to two shootings within the unincorporated area of Vallejo in Solano County. During the investigations of the two shootings, Jacob HARDING-ABEYTA was identified as a possible suspect because a Mercedes

vehicle registered to him was captured on surveillance leaving the scene of the shooting on September 29, 2020.

10. On October 7, 2020 a deputy with the Solano County Sheriff's Office observed a Mercedes driving with no front plate, a violation of 5200(a) of the California Vehicle Code (CVC). The vehicle also had tinted front driver side and front passenger windows, a violation of CVC 26708. The deputy initiated a traffic stop, and the Mercedes stopped in the driveway of 1247 Magazine St. The driver was identified as HARDING-ABEYTA. HARDING-ABEYTA was on active CDC parole for PC 664/187 (Attempted Murder). Due to HARDING-ABEYTA's parole status, a search of his person and vehicle were conducted. HARDING-ABEYTA advised he had a black iPhone in a black "Otterbox" case. The phone was located in the center console next to the driver seat where HARDING-ABEYTA was seated upon the stop. Deputies confirmed the phone did not belong to the other occupants. The photo on the lock screen to the phone was of HARDING-ABEYTA with his daughter.

11. Another Mercedes was in the driveway and registered to HARDING-ABEYTA. During the stop, deputies learned the keys to the other Mercedes were inside the 1247 Magazine St. residence (the house HARDING-ABEYTA stopped at) and the keys for the Mercedes HARDING-ABEYTA was stopped in had a key to the front door of this residence. HARDING-ABEYTA advised Deputies he and his family were currently staying at 1247 Magazine St. but were looking for a more permanent residence.

12. 1247 Magazine St. was not HARDING-ABEYTA's listed parole address. Due to HARDING-ABEYTA's possession of a key to 1247 Magazine St., the fact he parked in the driveway where another one of his vehicles was also parked, and his admission to staying at the residence, deputies conducted a parole compliance check of the residence.

13. Inside of the common area of the residence, deputies located indicia belonging to HARDING-ABEYTA, such as mail in his name. Deputies also located a wallet containing credit cards belonging to B.V., who was also on also on CDC Parole.

14. In the bedroom on the southwest side of the residence (Room #1). Deputies located a crib, as well as male, female, and baby clothes. These items were consistent with HARDING-ABEYTA's situation in life, since he was stopped with his girlfriend and young daughter. Deputies located additional indicia in a bag belonging to HARDING-ABEYTA. The indicia included items such as a Mercedes Benz

3

of Fairfield Credit denial letter and a Diamonds Forever appraisal for a diamond cross pendant.

15. Behind the bedroom door was a white paper bag containing a black gun case. The gun case was for a Springfield XDS .45 with serial number XS562903. The case included a magazine, one round of .45 caliber ammunition, and miscellaneous parts for the firearm. In the same bag was a box of Magtach .45 Auto CBC ammunition containing 17 live rounds and a holster. Under the mattress, deputies located a Springfield XDS bearing serial number XS562903. The handgun had one round in the chamber and five in the magazine.[1] On a top shelf in the bedroom closet was a white plastic bag. Inside the bag was a polymer 80 handgun frame with no serial number and more firearm parts and ammunition. In the bathroom, which was only accessible through Room 1, deputies located 40.74 grams of suspected cocaine inside of a bag on top of the medicine cabinet.[2]




| FIGURE 1: COCAINE LOCATED IN HARDING-ABEYTA'S BATHROOM | FIGURE 2: SPRINGFIELD FIREARM LOCATED IN HARDING-ABEYTA'S ROOM |

16. After being advised of his *Miranda* rights, HARDING-ABEYTA denied living in the residence, claiming he only couch-surfed there occasionally. He denied involvement in the shootings and claimed he allowed others to use his Mercedes (referring to the vehicle that was seen leaving the scene of one of the shootings). He also denied that any of the items in the residence belonged to him. ABEYTA-HARDING eventually asked to speak with an attorney and the interview ended.

17. S.M. (HARDING-ABEYTA's girlfriend and passenger during the traffic stop) advised deputies the crib belonged to other individuals who resided inside the residence. S.M. said she and HARDING-ABEYTA stayed at the residence from time to time.

---

[1] In a different bedroom of the house containing indicia belonging to B.V., officers located an extended 9mm magazine.

[2] Officers also discovered small amounts of heroin and methamphetamine in an attached garage.

4

18. Deputies responded to HARDING-ABEYTA's listed parole address (500 Maple Ave) and confirmed HARDING-ABEYTA did not reside there.

19. HARDING-ABEYTA was arrested and booked into county jail. Detective Friend later spoke with V.C. (the mother of HARDING-ABEYTA's child) via telephone. V.C. advised she knew HARDING-ABEYTA had been living in south Vallejo but she was not sure where. V.C. advised she did not have phone but could be reached via email.

20. On October 8, 2020, law enforcement test fired the Springfield firearm. The casings from the test fire were sent to an ATF laboratory for comparison.

21. At 4:00 PM, Detective Friend received the following email from V.C.'s email address: "When I called last night I was ready to confess to the truth but got scared when you mentioned CPS. But I can't eat, sleep, or function right now with the guilt I feel. I need to turn myself in because Jacob was only at that residence to drop my daughter off to me. We were supposed to meet there but I passed by and seen Police activity and kept driving. I don't have a stable place to live right now and have been house to house but was staying at that house for a little while and he came almost everyday to see his daughter. He just so happened to get pulled over while trying to meet with me to drop her off. The gun and drugs were mine. Nobody knew about any of it and him and his girl did have a set of keys since our daughter laid her head there. The only connection Jacob had to that house was because of me, but Our daughter is the only reason he was ever there. Me and Jacob are not on good terms because of my depression I would constantly start arguments with him but I don't know why I even for a second thought that because of our fall out he should take blame. Only thing he did was whatever you guys pulled him over for. As far as what was in that house belonged to me. I had just showed up to my cousins house before calling you which is why I figured you guys knew it was me because then you mentioned my cousin during the conversation."
Despite this statement, officers found no indicia belonging to V.C. inside the residence during the search.

22. On October 16, 2020 the comparison report from ATF was received from the Sheriff's Office. The casings sent for testing were a presumptive match to the two shootings HARDING-ABEYTA was being investigated for.

23. Officers later obtained a search warrant for HARDING-ABEYTA's cell phone. A search of the phone revealed two photos of what appeared to be the same Springfield firearm located during the search, without an attachment on the lower frame of the firearm. One of the firearm photos also depicted cash and a distinctive diamond cross pendant necklace. This photo was GPS stamped to a very close proximity to 1247 Magazine St., and dated October 1, 2020. In a different photo on the phone, HARDING-ABEYTA is wearing what appears to be the same diamond cross pendant necklace seen in the photo with the gun. On the day officers discovered the firearm in HARDING-ABEYTA's room, they

5

also found a Diamonds Forever appraisal for a diamond cross pendant in the same room. As demonstrated in the pictures below, the picture from the appraisal is consistent with the photos of the necklace located on the cell phone, and identifies the owner of the necklace as "Jacob Abayte."

|  |  |
|---|---|
| FIGURE 3: SPRINGFIELD FIREARM PICTURE NEXT TO DISTINCTIVE NECKLACE ON 10/1/2020 (FROM HARDING-ABEYTA'S PHONE) | FIGURE 4: HARDING-ABEYTA ON 10/3/2020 WEARING A DISTINCTIVE NECKLACE (FROM HARDING-ABEYTA'S PHONE) |
|  |  |
| FIGURE 5: CLOSE-UP OF NECKLACE CONSISTENT WITH THE ONE IN FIGURE 3. | FIGURE 6: APPRAISAL FOR DISTINCTIVE NECKLACE FOUND IN ROOM CONTAINING SPRINGFIELD FIREARM ON 10/7/2020 (FOUND IN ROOM WITH SPRINGFIELD FIREAM) |

24. Text messages on the phone revealed HARDING-ABEYTA was engaging in conversation(s) pertaining to the sale of "fire butta." I know "butta" and "butter" to be common slang terms referring to cocaine. I recognized the amount of cocaine seized on scene during this case to be more than what is typically possessed for personal use. Based upon these facts and opinion, I believe HARDING-ABEYTA possessed the cocaine for sale.

**Prohibited Person**

26. A review of HARDING-ABEYTA's criminal history shows he was convicted of attempted murder, in violation of California Penal Code 187(A), on or about February 24, 2014, in Solano County, California, and that he was sentenced to 72 months of incarceration.

**Interstate Nexus**

25. Based on my training and experience, I know that Springfield firearms are not manufactured in the state of California. Accordingly, this firearm must have traveled in interstate commerce prior to being possessed on October 7, 2020 in the Eastern District of California.

### III.     IV. CONCLUSION

26. Based on the information set forth in the paragraphs above, I submit that there is probable cause to believe that on or about October 7, 2020, in the Eastern District of California, HARDING-ABEYTA possessed a firearm, in violation of 18 U.S.C. §§ 922(g)(1).

27. Accordingly, based upon the foregoing, I respectfully request that the Court sign requested criminal complaint and issue the requested arrest warrant.

//

//

//

//

//

//

28. I declare under penalty of perjury that the statements above are true and correct to best of my knowledge and belief

29. I further request that the Court order that all papers in support of this application, including the affidavit and this complaint, be sealed until further order of the Court.  These documents discuss an ongoing federal criminal investigation that is neither public nor known to HARDING-ABEYTA.  Premature disclosure might cause HARDING-ABEYTA to flee and could endanger the safety of the arresting officers.  Accordingly, there is good cause to seal these documents until HARDING-ABEYTA is in federal custody.

Respectfully submitted,

/s/ Dalton Ryken
Dalton Ryken
Detective, Solano County Sheriff's Office

Subscribed and sworn to me via telephone on: June 7, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/s/ Adrian T. Kinsella
Approved as to form by AUSA Adrian T. Kinsella

8