ERICA TREEBY, SBN 275947
VINCENT BARRIENTOS, SBN 314623
3330 Geary Boulevard, 3rd Floor East
San Francisco, CA 94118
Telephone: 415/986-5591
Facsimile: 415/421-1331
Erica@Pier5Law.com
Vincent@BarrientosLaw.com

Attorneys for Defendant
JACOB HARDING-ABEYTA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO.: 2:21-CR-00118-JAM |
|---|---|
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR BAIL REVIEW; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF COUNSEL** |
| v. | |
| JACOB HARDING-ABEYTA | |
| Defendant. | |
| _____/ | Date: September 17, 2021
Time: 2:00 p.m.
Magistrate Judge Allison Claire |

**TO THE CLERK OF THE ABOVE-MENTIONED COURT AND TO THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that on the date and at the time indicated above, defendant JACOB HARDING-ABEYTA, through counsel, will and hereby does respectfully move this Court for reconsideration of the denial of pretrial release and subsequent detention order, and to allow his pretrial release under any combination of conditions approved by the Court.

This motion is predicated on the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., the files and records in this case, the declaration of counsel and memorandum of points and authorities filed

herewith, the exhibits filed herewith, and on any evidence and argument as may be presented at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

For the below-detailed reasons, Mr. Harding-Abeyta respectfully moves this Court to release him from custody on the below-specified conditions pursuant to the Bail Reform Act at 18 U.S.C § 3142. Mr. Harding-Abeyta requests to reopen this matter based on information that was not known to him at the time of his prior detention hearing; this information has a material bearing on whether or not conditions of release exist that will reasonably assure his appearance and the safety of any other person and the community.

I.   **RELEVANT PROCEDURAL BACKGROUND.**

On June 17, 2021, Defendant Jacob Harding-Abeyta made his initial appearance on a one-count complaint charging him with violating of Title 18, United States Code, section 922(g)(1) [felon in possession of a firearm].

A brief detention hearing was also held on June 17, 2021, before United States Magistrate Judge Deborah Barnes.  The government moved for detention in accordance with the findings and recommendations set forth in the pretrial services report. Mr. Harding-Abeyta, who was represented by Benjamin Galloway from the Federal Defender's Office, submitted on the issue of detention without offering any argument or evidence. (Exhibit A, Transcript of 6/17/2021 Detention Hearing, p. 6, lines 16-18.)  Magistrate Judge Barnes ordered Mr. Harding-Abeyta "detained as a flight risk and a danger to the community for the reasons stated in the pretrial services report." (Id., at p. 6, lines 20-22; *see also*, 6/17/21 Order of Detention Pending Trial, ECF No. 7, and Minutes, ECF No. 5.)

Significantly, and as set forth in the pretrial services report, Mr. Harding-Abeyta was not interviewed by Pretrial Services prior to the detention the hearing; thus, at the time of the recommendation, no information was known or considered regarding Mr. Harding-Abeyta's background, residence, family ties, employment history, financial resources, possible sureties and/or release plan. (Pretrial Services Report.) Rather, the recommendation was based primarily upon the instant charge and Mr. Harding-Abeyta's past conduct and criminal history.

On July 1, 2021, Mr. Harding-Abeyta was arraigned on a one-count indictment before Magistrate Judge Allison Claire; the indictment charged a violation of 18 U.S.C. § 922(g)(1) for possession of a single handgun. ECF Nos. 9, 12.

Multiple factors, previously unavailable to defendant and this court, and the proffer herein, present factors in support of Mr. Harding-Abeyta's pretrial release. Accordingly, Mr. Harding-Abeyta herein prays for pretrial release, allowing for his release to the custodianship of either his wife and mother, or his long-time family friends, James and Jeanne Mezzacappa, all of whom are willing to act as third-party custodians, in addition to electronic monitoring, curfew, and any other reasonable conditions set by this Court.

## II.   MR. HARDING-ABEYTA'S PERSONAL HISTORY AND CHARACTERISTICS.

Jacob Harding-Abeyta is twenty-eight-year-old lifelong resident of Vallejo. He has deep roots in the Bay Area, where most of his friends and family also reside. He was raised by his mother Kerri Harding, who currently lives in Vallejo with her husband, Paul.

Jacob is a dedicated and devoted father to two young girls, ages 2 and 3. He plays a vital role in his children's lives, who are dependent on his care and support. Indeed, Jacob has been the primary caregiver to his children since they were born; he strives to support his family both economically and emotionally, and desires nothing more than to continue to play an active role in his daughters' lives.

Sadly, in June of this year, the mother of Jacob's children suffered an unknown medical event, which left her completely incapacitated and effectively braindead. It is unknown whether she will ever recover.

In mid-August of this year, Jacob married his partner Shaunna McPhail, with whom he has been in a committed relationship with for over a year. When Jacob was taken into custody in this case, Shaunna moved into Jacob's mother's home so that the two could share the responsibility of caring for Jacob's young daughters. Although Jacob's children are fortunate to have both Shaunna and Kerri in their lives, there is no substitute for the love and support of their father.

While Jacob now enjoys a supportive network of family and friends, his childhood was less than idyllic. Jacob's father abandoned his family not long after Jacob was born, and Jacob's mother struggled to provide a stable and secure home-life for Jacob and his siblings. Consequently, several of

his mother's close friends stepped in to fill gap left by his absent father. The relationships that were established with this tight-knit group of friends continue to this day.

Dusti Kocher, who has known Jacob since he was six-months old, established an unbreakable bond with Jacob due to her close friendship with his mother, Kerri. Indeed, Dusti considers herself to be Jacob's second mother. She writes: "We may not be blood[,] but I consider him to be one of my kids and to my children he is their brother." (Exhibit B, Character Letters, Dusti Kocher at p. 1.)

The letters received on Jacob's behalf share a common theme: family. Not only has Jacob maintained life-long relationships with friends who consider him to be family, he is also described in glowing terms as trustworthy, responsible, and a devoted father, whose sole focus is raising his two young girls and providing for their future. Jeanne Mezzacappa, who has known Jacob since he was born, states: Jacob's "children are the most important thing in his life. He always makes them his number one priority, even more so now that they don't have a mom to help raise them. He is loving and very family oriented." (Exhibit B, Jeanne Mezzacappa at p. 2.) Similarly, Heidi Lynn Corneto-Pendergast, who describes herself as Jacob's godmother, explains that Jacob "is the sole provider for his two daughters, and he was on the right track for his life with his children." (Id., Heidi Lynn Corneto-Pendergast at p. 4.)

Jacob's ties to the community extend beyond his fatherly duties and family ties to a history of gainful employment. Following his release from the CDCR in 2018, Jacob held down a number of jobs, including positions at Petaluma Poultry and MycoWorks, an innovative company that makes leather from mushrooms.

Most recently, Jacob obtained a job as an apprentice with the Pile Drivers Union, Local #37. Unfortunately, when Jacob suffered an accidental gunshot wound on May 3, 2020, he was forced to go on medical leave until he was physically able to resume work. At the time of his arrest for the instant federal charges, Jacob was preparing to return to the apprenticeship program, as his physical condition had improved. If granted pretrial release, Jacob plans to resume his apprenticeship with Local #37 and continue to work toward obtaining journeyman status.

At the outset of this case, Jacob retained the undersigned private attorneys, further exemplifying his commitment to litigating the instant matter, which reflects that he is not a flight risk.

Jacob does not possess a passport and has no history of international travel. Moreover, all of Jacob's immediate family and close friends reside in within the Bay Area.

In addressing danger to the community concerns, Mariah Massa, Jacob's cousin, confirms that Jacob has a non-violent nature: She writes: "Even in more serious instances, I was always impressed with Jacob's ability to remain calm, think before acting, and always have the people he loved at the top of his priority list. We could be out having a good time and if the energy shifted and some strangers began to get aggressive, Jacob would take the people he cared about and remove everyone, including himself, from the situation….never enticing or finding a need to get violent. In all of my [twenty-five] years of knowing him this has always been his approach[;] not once have I seen Jacob handle a situation with violence or aggression." (Id., Mariah Massa at p. 5.)

Jacob further represents that he is not a danger to the community for the following reasons:

1. While Jacob concedes to a criminal history, the majority of the offenses for which he was charged occurred when he was barely over the age of eighteen. Jacob's childhood was marred instability, poverty, and a lack of parental guidance, all of which contributed to his mistakes and interactions with law enforcement as a teenager and young man. However, while serving his sentence at the CDCR, Jacob determined to change his life for the better. He obtained his GED, completed community college classes, and received certificates for his participation in substance abuse and anger management courses. As observed by Mariah Massa, Jacob has made great strides toward rehabilitation: "He has taken fault and mistakes and harvested a future of change and bettering himself, turning a failure into a lesson…" (Id., Mariah Massa at p. 6.) Jacob's friend of over fourteen years, Sean Chilberg further confirms the personal growth Jacob has made: "After Jacob's release from his prior conviction, I have seen a whole different side of Jacob….[he] obtained a job where he worked hard and was promoted quickly." (Id., Sean Chilberg at p. 3.) Similarly, Ms. Corneto-Pendergast notes that she has witnessed "the change in Jacob's voice of complete accountability." (Id., Heidi Lynn Corneto-Pendergast at p. 4.)

2. Jacob does not have any active warrants or detainers and is no longer under parole supervision. Significantly, prior to the instant case being initiated by the Federal Government, on October

16, 2020, Jacob was granted bail in Solano County Superior Court Case No. VCR236652 in the amount of $45,000.[1] Further, Jacob's parole agent declined to violate Jacob's parole after the initiation of the state case, but instead chose to place Jacob on an ankle monitor.

3. Jacob denies any gang involvement or that he is a member or affiliate of the Family Affiliated Irish Mafia. No evidence of gang involvement or affiliation has been provided by the government or Pretrial Services.

Jacob understands the serious nature of the charge he faces in this case, as well as his obligation to appear at each and every hearing held. Moreover, he will unequivocally abide by all conditions of release set forth by the Court and Pretrial Services.

### III.   PROFFER.

In support of Mr. Harding-Abeyta's request for pretrial release, the defense proffers that he be released to the custodianship of his mother, Kerri Harding, and his wife, Shaunna McPhail, who both currently live together in a home in Vallejo[2] and are willing to act as third-party custodians. In the alternative, James and Jeanne Mezzacappa, Mr. Harding-Abeyta's long-time family friends, who reside in American Canyon[3], have also volunteered to act as act as third-party custodians and

---

[1] The complaint filed against Mr. Harding-Abeyta in Solano County Superior Court Case No. VCR236652 arose out of the same incident that forms the basis of the instant federal case. In the state case, Harding-Abeyta was charged by complaint dated October 9, 2020, with violations of Penal Code § 29800(a)(1) [felon in possession of a firearm]; Health & Safety Code § 11351 [possession for sale of a controlled substance, to wit: cocaine]; and Penal Code § 273a(a) [endangering the safety of a child]. On June 16, 2021, the state case was dismissed; Mr. Harding-Abeyta was arrested that same day for the charge pending in the instant federal matter.

[2] Kerri Harding and her husband Paul live together in a 3-bedroom home in Vallejo. Paul's adult brother also lives in the home and is agreeable to Mr. Harding-Abeyta residing there. Mr. Harding-Abeyta's wife, Shaunna, lives in the third bedroom with Mr. Harding-Abeyta's children, which is the room where Mr. Harding-Abeyta would also stay if he were released to this residence. Kerri Harding is not currently employed; thus, she would be available to supervise and monitor Mr. Harding-Abeyta throughout the day and night.

[3] Mr. and Mrs. Mezzacappa, who are retired, own a four-bedroom home in American Canyon, where they reside with their two twenty-five-year-old granddaughters. There is an available bedroom in Mr. and Mrs. Mezzacappa's home for Mr. Harding-Abeyta to live.

supervise Mr. Harding-Abeyta should the Court and Pretrial Services deem their home a more suitable option.

Further, the defense proffers that Mr. Harding-Abeyta be placed on electronic home monitoring (location monitoring), and that he be subject to a curfew and check-ins with Pretrial Services. While the defense hopes that Mr. Harding-Abeyta be permitted by this Court to maintain employment (specifically, resume his apprenticeship program with the Pile Drivers Union, Local # 37), if the Court is uncomfortable with that, Mr. Harding-Abeyta is also willing to be on house arrest. Mr. Harding-Abeyta is amenable to any other combination of conditions that the Court or Pretrial Services may require, including, but not limited to, drug testing and participation in Court programs.

The defense contends that the above-stated conditions will ensure that Mr. Harding-Abeyta will not be a danger to the community as he will be limited in his movements and under constant supervision.

Additionally, Mr. Harding-Abeyta's wife is willing to sign a signature bond in support of his release in any amount this court deems appropriate.

As set forth above, Mr. Harding-Abeyta is not a flight risk due to his extensive community ties and the responsibility he bears in caring for his daughters. Moreover, Mr. Harding-Abeyta has no prior failures to appear or instances of absconding from supervision, further evidencing the likelihood that he appears before this Court as directed.

Accordingly, Mr. Harding-Abeyta hereby respectfully requests reconsideration of the detention order in light of new facts, set forth herein, that support a finding that he is neither a flight risk nor a danger to society, and in light of the undue hardship upon his family caused by further pretrial detention.

## IV.   ARGUMENT.

   A.   <u>New Factors Exist that Warrant Reopening Mr. Harding-Abeyta's Detention Hearing and Support that Mr. Harding-Abeyta Should Be Granted Pretrial Release, Subject to Whatever Conditions the Court Deems Necessary, to Ensure His Appearance and the Safety of the Community.</u>

Under the Bail Reform Act of 1984, a judicial officer may detain a person pending trial only if, after a detention hearing pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no

conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." The Supreme Court has cautioned that "in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739 (1987).

In United States v. Motamedi, the court stated:

> Under the 1984 Bail Act, a finding that a person presents a danger to the community must be supported by clear and convincing evidence.  The burden of proof governing a finding of flight risk is preponderance of the evidence.

767 F.2d 1403 (9th Cir. 1985)

"The Ninth Circuit's 'preponderance of the evidence standard in pretrial detention matters is more than the usual 'tips the scales slightly' test applied in civil cases. To give effect to the principle that doubt regarding the propriety of release be resolved in favor of the defendant, the court is to rules against detention in close cases, applying a 'clear preponderance' test." United State v. Chen, 820 F. Supp. 1205, 1208 (9th Cir. 1992).

The Bail Reform Act requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community.  United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991); Motamedi, 767 F.2d at 1405.  Thus, pretrial release is required unless no combination of conditions can reasonably assure the appearance of the person and the safety of the community.  18 U.S.C. § 3142.  Only rarely should defendants be denied release and any doubts regarding the propriety of release should be resolved in favor of release. Gebro, 948 F.2d at 1121.

In assessing whether the defendant is a flight risk or danger to the community, it is "extremely important to emphasize" the following point:

> When courts assess the magnitude of the threat that an individual defendant poses to the government's regulatory interest, we think that the proper focus is not on how big that threat would be if the defendant were released on no conditions, but, instead, the focus should be is on how big that threat would be if the defendant were released on stringent conditions aimed at reducing as much as possible the likelihood of harm to the threatened regulatory interests.  In other words, **the issue is not how much threat**

**the defendant would pose if he were as free as any law-abiding citizen, but how much threat he would pose if he were released on the most restrictive available conditions**.

United States v. Aileman, 165 F.R.D. 571, 589 (N.D. Cal. 1996) [emphasis added].

In ascertaining whether to detain or release defendant, the judicial officer is directed by the statute to consider:

(1) the nature and seriousness of the offense charged;

(2) the weight of the evidence against the defendant;[4]

(3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse and criminal history; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); United States v. Chen, 820 F.Supp. 1205, 1207 (N.D. Cal. 1992); United States v. Motamedi, 767 F.2d 1403, 1407 (9th Cir. 1985).

Each of these factors, as applied to Mr. Harding-Abeyta, warrant reconsideration of the detention order to allow for pretrial release on conditions such as electronic monitoring, curfew, or home confinement. As discussed above, Mr. Harding-Abeyta does not present a flight risk due to his deep ties to his family and the community, lack of international travel, and absence of a passport. Further, Mr. Harding Abeyta has no history of failing to appear for court.

While the charge pending against Mr. Harding-Abeyta is serious, it does not trigger the rebuttable presumption of dangerousness or flight risk that arises under 18 U.S.C. § 3142(e)(3). Further, this type of charge is not dispositive of dangerousness. *See, e.g.,* United States v. Garcia, No. CR 13-601, 2014 WL 1478902 (N.D. Cal. Apr. 14, 2014) (pretrial release granted to defendant charged with felon in possession of firearm).

---

[4] If used the prosecution to support detention, this is the least important factor to be considered. However, where the evidence is weak, it becomes an important factor, weighing in favor of release. Chen, 820 F.Supp. at 1207.

Significantly, prior to this case being initiated by the Federal Government, Mr. Harding-Abeyta was granted bail in the amount of $45,000 in the state case initiated by the Solano County Superior Court, which was based upon the same conduct as the instant federal action. Although not expressly binding in the federal arena, the prior bail determination by Solano County Superior Court should be considered and given great weight by this Court in ascertaining whether to detain or release Mr. Harding-Abeyta. Both flight and danger to the community are issues that are considered when a state court evaluates whether to grant bail in accord with Cal. Penal Code § 1275.[5]

Further, the character letters, attached hereto as <u>Exhibit B</u>, which were not previously available to this Court, support the defense's contention that Mr. Harding-Abeyta does not present a danger to the community. Rather, the letters exemplify Mr. Harding-Abeyta's connection to the community, deep ties to his family, gainful employment with the Pile Drivers Union, and commendable efforts at rehabilitation.

While Mr. Harding-Abeyta concedes to a criminal history, it is important to note that the majority of his arrests and convictions occurred when he was under the age of twenty. As the character letters attest, Mr. Harding-Abeyta has made great strides toward rehabilitation since his release from the CDCR in 2018. Significantly, Mr. Harding-Abeyta has no parole violations even though the arrest that forms the basis for the instant charges admittedly occurred while he under parole supervision. Further, Mr. Harding-Abeyta denies any gang involvement or that he is a member of the Family Affiliated Irish Mafia.

Finally, it is significant that Mr. Harding-Abeyta's new wife, Shaunna McPhail, is willing to sign an unsecured signature bond in any amount the Court deems appropriate. This demonstrates the confidence his wife has in his commitment to abiding by any conditions of release.

---

[5] See, Penal Code § 1275(a)(1): "In setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. The public safety shall be the primary consideration."

  B. <u>The Rare Circumstances Required for Detention Are Not Present Here</u>.

Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in favor of release. <u>United States v. Ward</u>, 63 F.Supp.2d 1203 (1999 C.D.Cal.)  If there are any conditions of bail which will **reasonably** assure defendant's return the court must grant bail. However, the provision that conditions "reasonably assure" appearance and safety does not require a guarantee of appearance or safety. See <u>United States v. O'Brien</u>, 895 F.2d 810 (1st Cir. 1990); <u>United States v. Fortna</u>, 769 F.2d 243 (5th Cir. 1985), *cert. denied*, 479 U.S. 950 (1986).  Rather, it requires an "objectively reasonable" assurance of community safety and the defendant's appearance at trial. <u>Id</u>.

The fact that the defendant is charged with an offense ... is not in itself, sufficient to support a detention order. <u>United States v. Hurtado</u>, 779 F.2d 1467 (11th Cir. 1985).  The burden of persuasion remains on the government.  <u>Hurtado</u>, <u>supra</u>, 779 F. 2d at 1478.  The government may not merely come before the trial court, present its indictment, and thereby send the defendant off to jail ... the government must establish by clear and convincing evidence that the defendant is one of those rare individuals warranting detention. <u>United States v. Jefferies</u>, 679 F.Supp. 1114, 1117 (1988 M.D. Ga). The court reviews the factors within 18 U.S.C. sec. 3142(g) while keeping in mind defendant's presumption of innocence.  *See* 18 U.S.C. sec. 3142(j) (Nothing in this section shall be construed as modifying or limiting the presumption of innocence.)

If the court determines that personal recognizance or an unsecured bond will not reasonably assure appearance or will endanger any other person or the community, 18 U.S.C. § 3142(c) still mandates release ("shall order pretrial release") subject to certain specified conditions. The conditions must be the least restrictive conditions necessary to reasonably assure the defendant's appearance and the community's safety. <u>Id.</u>

Mr. Harding-Abeyta proffers that a release subject to electronic monitoring with curfew or home confinement; monitoring by either his wife and mother, or by Mr. and Mrs. Mezzacappa; and any other restrictions this Court deems appropriate will mitigate and eliminate any danger to the community or risk of flight. Moreover, Mr. Harding-Abeyta's wife's willingness to sign an unsecured signature bond adds additional assurance that Mr.

Harding-Abeyta will comply with conditions of release and sufficiently protect this Court's interest in Mr. Harding-Abeyta's appearance and the community's safety. There is no evidence before this Court to suggest that Mr. Harding-Abeyta would risk everything and destroy the most important thing that he has in the world, his family, by violating their trust and the trust of the Court should he be granted pretrial release.

### V. CONCLUSION.

WHEREFORE, defendant prays that this Court release him, and he be subject to supervision as directed by Pretrial Services. He will abide by all other reasonable conditions of release as may be specified by the Court.

Dated: August 31, 2021					Respectfully submitted

					/s/	ERICA TREEBY
					ERICA TREEBY
					VINCENT BARRIENTOS
					Attorneys for Defendant
					JACOB HARDING-ABEYTA

## DECLARATION OF COUNSEL

I, ERICA TREEBY, declare:

I am an attorney licensed to practice in the State of California and before this court. I am one of the attorneys of record for defendant JACOB HARDING-ABEYTA herein.

It is my information and belief that the facts and statements set forth in the accompanying documents, including the motion for bail review and memorandum of points and authorities in support thereof, are true and correct.

I declare under penalty of perjury that the foregoing is true and correct, except as to matters therein stated on information and belief, and as to those matters, I believe them to be true. Executed on August 31, 2021, at San Francisco, California.

                                                           /s/          ERICA TREEBY
ERICA TREEBY
Attorneys for Defendant
JACOB HARDING-ABEYTA