UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JACOB HARDING-ABEYTA,

Defendant.

No. 2:21-CR-00118-JAM

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

The matter before the Court is Defendant Jacob Harding-Abeyta's Motion to Suppress. See Mot. to Suppress ("Mot."), ECF No. 43. The Government opposes the motion. See Opp'n, ECF No. 45. Defendant replied with supplemental declarations and exhibits. See Reply, ECF No. 47. The Government filed a surreply with the Court's leave responding to Defendant's new evidence. See Surreply, ECF No. 52.

Before the Court's evidentiary hearing on the matter, Defendant filed a supplemental brief on the issue of standing. See Def.'s Suppl. Brief, ECF No. 74. The Government filed a response. See Gov.'s Resp., ECF No. 82. Defendant filed a final response. See Def.'s Resp., ECF No. 83. The matter being fully

briefed was submitted. See Minute Order, ECF NO. 77. Having considered the testimony at hearing, arguments of counsel, the papers submitted, and the applicable law, the Court DENIES Defendant's motion to suppress.

I. BACKGROUND

On October 7, 2020, just after 2:00 p.m., Solano County Sheriff's Office Deputy Russel Lopez pulled Defendant Jacob Harding-Abeyta ("Defendant") over in Vallejo, California, for driving without a front license plate and with tinted windows. Mot. at 3. Defendant turned and pulled his car into the driveway of 1247 Magazine Street. Id. At the time, Defendant's uncle, girlfriend, and one-year-old daughter were also in the vehicle. Id.

Deputy Lopez approached the vehicle on the driver's side and asked for Defendant's vehicle registration and license, which he received. Id. Upon learning that Defendant was on parole for attempted murder, Deputy Lopez detained Defendant by handcuffing him and placing him in the back of the deputy's patrol vehicle. Id. at 3-4.

Deputy Taylor Magaziner arrived on the scene around this time. Mot. at 4. Together, Deputies Lopez and Magaziner searched Defendant's Mercedes. Deputy Magaziner then noticed a second Mercedes parked in the driveway of the residence and, upon asking dispatch to conduct a DMV records check, learned that the second Mercedes was also registered to the Defendant. Id. Deputy Magaziner asked the Defendant if he had the keys to the second Mercedes; Defendant said no. Id. Deputy Magaziner asked if the keys to the second Mercedes were inside the residence;

Defendant said yes. Id. Deputy Magaziner tested the door of the second Mercedes, found it was unlocked, and conducted a parole search of the vehicle. Id. Neither vehicle yielded any contraband. Id.

Detective Dylan Friend arrived on the scene to assist in the traffic stop. Opp'n at 3. Detective Friend located and secured a black iPhone from the first Mercedes that was later confirmed to be Defendant's phone. Mot at 4. Detective Friend then approached Defendant's girlfriend and, observing a lanyard around her neck, asked if she had the key to the residence. She said no. The officers then tested the front door of the residence and found it locked. Detective Friend returned to the girlfriend and asked again if she had the key to the residence. After implying that the officers may force the door open if necessary, Detective Friend received a key to the residence from Defendant's girlfriend. Id.

Detective Charles Olmstead arrived on the scene around this time. Mot. at 3. Together, the deputies and detectives searched the house and found firearms and a white powdery substance that they suspected was contraband. Mot. at 6.

After the search of 1247 Magazine Street, the officers visited Defendant's listed parole address at 500 Maple Avenue, Vallejo, California, where they spoke with Defendant's mother and stepfather, who indicated that Defendant no longer lived there. Mot. 6-7.

As a result of the search, Defendant is charged with one count of being a felon in possession of a firearm that had been transported in interstate and foreign commerce, in violation of

18 U.S.C § 922(g)(1), and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). See Superseding Indictment, ECF No. 56. Defendant brings this motion to suppress evidence found at 1247 Magazine Street.

## II. OPINION

### A. Legal Standard

The Fourth Amendment protects the right to be free from unreasonable searches or seizures. U.S. Const. Amend. IV. "A seizure conducted without a warrant is 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (quoting Minnesota v. Dickerson, 508 U.S. 366, 372 (1993)). "The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government." United States v. Scott, 705 F.3d 410, 416 (9th Cir. 2012). The government must prove the lawfulness of a warrantless search by a preponderance of the evidence. United States v. Vasey, 834 F.2d 782, 785 (9th Cir. 1987). Evidence obtained as a direct or indirect result of an unlawful search or seizure is inadmissible as "fruit of the poisonous tree." United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013).

Police officers, however, "may lawfully conduct searches of parolees or their residences without satisfying the Fourth Amendment's warrant requirement when certain conditions are met." United States v. Grandberry, 730 F.3d 968, 973 (9th Cir. 2013). The two conditions required are (1) "that the parolee is subject to a provision authorizing such warrantless searches," and

(2) that "[b]efore conducting a warrantless search of a residence . . . law enforcement officers [have] probable cause to believe that the parolee is a resident of the house to be searched." Id. (internal citations omitted). These requirements ensure that even parolees are protected by the Fourth Amendment.

Before a parolee may challenge the constitutionality of a parole search, however, he "must demonstrate a legitimate expectation of privacy in the place or item searched by showing an actual subjective expectation of privacy which society is prepared to recognize." United States v. Davis, 932, F.2d. 752, 756 (9th Cir. 1991). Without such a showing, a parolee would lack standing to bring his motion to suppress, and his motion must consequently be denied.

B. Discussion

Defendant contends that he has standing to challenge the Solano Sheriff's Office's search of the Magazine residence because he was an overnight guest at the time of the search. Mot. at 7. Both the Supreme Court and the Ninth Circuit have held that an overnight guest has standing to challenge the search of a host's home. Minnesota v. Olson, U.S. 91, 96-97 (1990) ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment").

While there is no clear-cut test for an overnight guest, courts agree that it is the relationship between the overnight guest and his host, and the "common social understanding" that comes with it, that renders a guest's expectation of privacy reasonable and subject to Fourth Amendment protections. Olson, 495 U.S. at 98-99. For this reason, merely sleeping in a

residence is not sufficient. "An 'overnight guest' is much more than someone who simply spends the night. Such status is contingent upon an invitation by an authorized host." United States v. Vasquez, 706 F. Supp 2d 1015, 1023 (C.D. Cal. 2010) (internal citations omitted). The defendant has the burden of "demonstrat[ing] that he has a reasonable expectation of privacy giving rise to Fourth Amendment protection. United States v. Caymen, 404 F.3d 1196, 1199 (9th Cir. 2005).

Defendant posits that he was invited to stay at the Magazine residence as an overnight guest by Benjamin Villenas, another parolee. Mr. Villenas, however, declined to testify at the Court's evidentiary hearing on March 21, 2023, citing his Fifth Amendment rights.

Lacking witness testimony, the Court turns to Defendant's evidentiary submissions to determine if Defendant has otherwise carried his burden to establish standing as an overnight guest. Defendant's chief support for his contention that he was an overnight guest are two declarations he submitted with his reply brief. See Decl. of Harding-Abeyta, ECF No. 47-1; Decl. of McPhail, ECF No. 47-2. Neither declaration identifies an authorized host. The declarations state simply that Defendant and his girlfriend occasionally stayed and stored their possessions at the Magazine residence. Decl. of Harding-Abeyta ¶ 3 ("On the date of the search, I was an overnight visitor at 1247 Magazine Street and had stayed at the house on several occasions in the months' [sic] prior. I was authorized to store some of my belongings in the house. Due to the length of time that has passed since the search, I do not recall the specific

dates that I stayed at the house but I do recall I stayed there in the summer and fall of 2020”).

Even if the Court were to credit Defendant’s self-serving declaration, a bald assertion that he was an overnight guest is insufficient to establish that he had a legitimate expectation of privacy in the house. See United States v. Armenta, 69 F.3d 304, 308 (9th Cir. 1995) (holding that a defendant's sworn declaration was insufficient to establish a legitimate expectation of privacy, even when accompanied by other evidence such as police testimony that the defendant stayed in the residence the night before and the presence of defendant’s wallet, baptismal certificate, and social security card application in the residence); c.f. Davis, 932 F.2d at 757 (concluding that defendant had a legitimate expectation of privacy as an overnight guest where he had a key to the apartment, was free to come and go as he pleased, stored things there, and paid at least a portion of the rent for the apartment). Reviewing the declarations reveal little about the conditions of Defendant’s stay: not whether he was permitted to come and go as he pleased, whether he may invite others into the space, nor whether he paid rent.

In contrast, Defendant’s declaration provided robust details about another location where he purported to stay: his aunt’s house in American Canyon. Decl. of Harding-Abeyta ¶ 4. His declaration identified an authorized host by name, the fact that he had a key to the home, and the fact that he was permitted to have his young daughters stay with him. Id. The availability of these facts underscores the absence of similar facts supporting

his stay at the Magazine residence.

Perhaps mindful of his evidentiary shortcomings, Defendant submitted a supplementary brief to persuade the Court to find standing "without the need for testimony of an authorized host." Def.'s Suppl. Brief at 4. Defendant relies on two cases from the Northern District of California: United States v. Albert, No. CR-05-00487-DLJ, 2006 WL 2078564(N.D. Cal. Jul. 24, 2006), and United States v. Dixon, No. 18-cr-00319-CRB, 2018 WL 6069941 (N.D. Cal. Nov. 20, 2018) (vacated on separate grounds). The Court finds neither case persuasive here.

First, the Court declines to follow Albert, because its opinion is too conclusory to lend persuasive authority. The Albert court concluded that its defendant had standing "as more than even an overnight guest" based on a police report and police testimony without elaborating on the contents of said report or testimony. Albert, 2006 WL 2078564 at *3. As such, there is insufficient basis for comparison.

Second, the Court distinguishes Dixon from the present case. Under Dixon, Defendant argues that he need not identify an authorized host, because the standing analysis is immaterial when the Government asserts a defendant is a resident of searched property. Def.'s Suppl. Brief at 4. The reasoning borrowed from Dixon is that when a Defendant asserts he is an overnight guest and the Government counters that he is a resident, the Court need not analyze the issue because standing is established in either scenario. See Dixon, 2018 WL 6069941 at *5 (declining to determine whether Dixon was a resident or an overnight guest because, "regardless of whether he is an overnight guest or a

resident, he has standing to challenge the search of Apartment K"). In such a manner, the Dixon court dispensed with the standing issue and did not require the defendant to prove he was an overnight guest.

The present case briefly took on a similar posture. Defendant asserted in his motion to suppress that he was an overnight guest. Mot. at 7. The Government opposed the motion and argued that he was not an overnight guest but a resident. Surreply at 4 (arguing Defendant has a "repeated and substantial connection to the residence well beyond that of a mere overnight guest [and that to] suggest otherwise considering the evidence presented is inconsistent with a common sense understanding of the everyday interactions and activities associated with living at a residence"). The Government, however, has since clarified its position. Both at the evidentiary hearing and in its response brief, the Government has consistently stated that Defendant was an illegal resident at Magazine Street and that he therefore cannot have a legitimate expectation of privacy. Gov.'s Resp. at 2. Defendant does not dispute that an illegal resident would lack standing to bring a motion to suppress.

To show that Defendant was an illegal resident at Magazine Street, the Government submitted evidence that Mr. Villenas, his purported host, was himself illegally residing at Magazine Street. The Government's evidence includes an interview with the landlord of the residence, who states he gave neither Mr. Villenas nor Defendant permission to reside at his rental property. See Exh. 9 to Gov.'s Resp., "302 Report Regarding Interviews with Landlord," ECF No. 82-9. The property was in

fact leased to Mr. Villenas's partner, "D.P.," who signed the lease. See Exh. 8 to Gov.'s Resp., "Lease for 1247 Magazine Street," ECF No. 82-8. Although Mr. Villenas's signature also appears on the lease, Mr. Villenas disavowed that signature in a video-call with Defendant, stating, "Man, that's not even, I didn't even sign that [lease], my baby mama signed that for me. That's why, on the lease, it's not my name printed, it's just a signature. You know what I'm saying?" See Exh. 3 to Gov.'s Resp., "Excerpt of 3/9/2023 Jail Video Call between Defendant and Mr. Villenas," ECF No. 80.

Given the cumulative evidence provided by the Government, the Court finds that Defendant was not lawfully residing at 1247 Magazine Street. Although Defendant challenges the Government's interpretation of the evidence, Defendant fails to address Mr. Villenas's video-call, which is the most damning piece of evidence.[1] See Def.'s Resp. Further, while Defendant denies that he was an illegal resident, he does not contend that he was a lawful resident either. Defendant instead persists in his overnight guest theory, stating, "[c]ontrary to the Government's contention, Defendant has not flip-flopped on his standing theory. Harding-Abeyta has asserted from the outset that his theory of standing was based upon his status as an overnight guest" Id. at 4 (emphasis added).

And so, after much jockeying, the parties' positions are

[1] The Government also submitted another video of a conversation between Defendant and Mr. Villenas, wherein the Defendant coaches Mr. Villenas through his anticipated testimony. See Exh. 1 to Gov.'s Resp., "Excerpt of 1/28/2023 Jail Call between Defendant and Mr. Villenas Showing Witness Tampering," ECF No. 82-1. Defendant's attempt to suborn perjury from Mr. Villenas lays bare the truth of his overnight guest theory for what it is: a sham.

clear. Defendant maintains that he is an overnight guest, and the Government asserts he is an illegal resident. As such, the present case has departed from the realm of Dixon, where the Government ostensibly conceded standing.

Because Dixon does not apply, Defendant must meet his burden to identify an authorized host to establish standing as an overnight guest. As discussed above, the social expectation of privacy that protects an overnight guest stems from the societal relationship between that guest and his host. Olson, 495 U.S. at 98-99. In the absence of persuasive evidence that such a host exists, the Court finds Defendant has failed to carry his burden to establish standing as an overnight guest. Accordingly, Defendant lacks standing to challenge the search. Given this finding, the Court need not reach the other arguments raised by the parties regarding probable cause.

## III. ORDER

For the reasons set forth above, the Court DENIES Defendant's Motion to Suppress.

IT IS SO ORDERED

Dated: April 10, 2023

JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE