Daniel B. Olmos (CA SBN: 235319)
Christopher Wheless (CA SBN: 348492)
NOLAN BARTON OLMOS & LUCIANO, LLP
430 D Street
Davis, CA 95618
(650) 326-2980 (t)
(650) 326-9704 (f)
dolmos@nbo.law

Counsel for Defendant
JACOB HARDING-ABEYTA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JACOB HARDING-ABEYTA,<br><br>Defendant. | Case No.  2:21-CR-00118-JAM<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**<br><br>Date:      January 9, 2024<br>Time:     9:00 a.m.<br>Court:    Hon. John A. Mendez |

Defendant Jacob Harding-Abeyta hereby files this reply to the government's opposition to Mr. Harding-Abeyta's motion to suppress. On October 7, 2020, Solano County Sheriff's Office deputies conducted a warrantless search of Mr. Harding-Abeyta's vehicle and its contents. On October 11, 2023, Mr. Harding-Abeyta filed a motion to suppress the fruits of that search. (Def. Mot., ECF No. 98). The government filed an opposition to that motion on November 18, 2023. (Gov. Opp'n, ECF No. 104).

The government's opposition argues that the instant motion to suppress should be construed by the Court as a motion to reconsider a previous motion to suppress filed by Mr. Harding-Abeyta's prior counsel. (Gov. Opp'n 4-5, ECF No. 104). However, this motion

challenges the search of Mr. Harding-Abeyta's vehicle, while the previous motion to dismiss challenged the search of the residence at 1247 Magazine Street in Vallejo, California.  Further, the prior motion was denied because the Court found that Mr. Harding-Abeyta lacked standing to challenge the search of that residence – notably, the government makes no such argument as it relates to the search of Mr. Harding-Abeyta's vehicle.  In sum, the legal issues raised in this motion to dismiss, and the search at issue, are entirely different from those raised by prior counsel.

In addition, the government argues that the search of Mr. Harding-Abeyta's vehicle was a valid parole search.  (Gov. Opp'n 7-10, ECF No. 104).  However, suspicionless searches of parolees are not lawful if they are arbitrary, capricious, or harassing.  *See, e.g.*, *People v. Bravo,* 43 Cal.3d 600, 610 (1987); *United States v. Korte,* 918 F.3d 750, 754 n.1 (9th Cir. 2019); *Samson v. California,* 547 U.S. 843, 856-857 (2006); Cal. Pen. Code § 3067(d).  Because Mr. Harding-Abeyta was subjected to an arbitrary and harassing search, the fruits of that search should be suppressed.

## PROCEDURAL HISTORY

Mr. Harding-Abeyta was arrested on October 7, 2020, and was booked into the Solano County Jail.  On June 7, 2021, this Court authorized an arrest warrant and complaint against Mr. Harding-Abeyta, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (Compl., ECF No. 1).  On June 24, 2021, a grand jury returned an indictment charging Mr. Harding-Abeyta with the same offense.  (Indictment, ECF No. 9).  On January 19, 2023, the grand jury returned a superseding indictment, charging Mr. Harding-Abeyta with the additional offense of possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  (Indictment, ECF No. 56).

On November 15, 2022, prior counsel for Mr. Harding-Abeyta filed a motion to dismiss, challenging the search of 1247 Magazine Street.  (Def. Mot., ECF No. 43).  The government filed its opposition on December 10, 2022.  (Gov. Opp'n, ECF Nos. 45, 46)  Mr. Harding-Abeyta filed a reply brief on December 16, 2022, and the government filed a surreply on January 5, 2023.  (ECF Nos. 47, 48, 52)  An evidentiary hearing was held on March 21, 2023, and the Court denied

1  Mr. Harding-Abeyta's motion on April 11, 2023.  (Ct. Order, ECF No. 84)  On October 11, 2023, Mr. Harding-Abeyta filed the instant motion to dismiss, now challenging the search of his vehicle.  (Def. Mot., ECF No. 98)  The government filed an opposition on November 18, 2023.  (Gov. Opp'n, ECF No. 104)

**ARGUMENT**

The government mischaracterizes the instant motion as a motion for reconsideration, and urges the Court to summarily deny the motion without considering its merits.  The government is mistaken.  This motion challenges the search of the vehicle that Mr. Harding-Abeyta was driving on October 7, 2020, an issue that was not litigated in Mr. Harding-Abeyta's previous motion to dismiss.  Thus, the Court should not construe the instant motion as a motion to reconsider.  Alternatively, the government argues that the search of Mr. Harding-Abeyta's vehicle was a valid parole search.  While Mr. Harding-Abeyta was on parole and subject to a search condition, for the reasons discussed below and in the initial pleading, the vehicle search on October 7, 2020, was arbitrary and harassing.  Thus, the fruits of that search should be suppressed.

**I.     It Would be Improper to Construe Mr. Harding-Abeyta's Motion to Suppress as a Motion to Reconsider.**

The government asks the Court to construe the instant motion as a motion to reconsider, and argues that it is precluded by the law of the case doctrine.  This argument is misplaced.  The law of the case doctrine generally precludes a court from reconsidering an issue that has been previously decided by the same court or a higher court in the same case.  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1977).  For the doctrine to apply, the issue in question must have been "decided either expressly or by necessary implication in [the] previous disposition."  *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied* 508 U.S. 951 (1993).

The law of the case doctrine does not apply here.  The instant motion challenges the search of Mr. Harding-Abeyta's vehicle – the previous motion to suppress challenged the search of 1247 Magazine Street.  The subject of the previous motion was described by the Court in its order denying that motion: "Defendant brings this motion to suppress evidence found at 1247 Magazine

Street." (Ct. Order 4, ECF No. 84).  More importantly, the reasonableness of the vehicle search was not "decided either expressly or by necessary implication." *Bible*, 983 F.2d at 154.  Notably, the government provides no citation or quote from the prior motion, or this Court's order, which would indicate that the search of the vehicle was previously litigated.  In fact, in the opening paragraph of its opposition, the government recognizes the fundamental difference between the two motions: "[H]aving lost his motion to suppress the fruits of the search of the house . . . [Mr. Harding-Abeyta] now apparently seeks to suppress the seizure and subsequent search of his cellular phone from the vehicle he was driving." (Gov. Opp'n 1, ECF No. 104).

Further, in making this argument, the government mischaracterizes this Court's order: "Given that this Court has already *explicitly decided the reasonableness of the searches* that occurred on October 7, 2020 under the Fourth Amendment, [Mr.] Harding-Abeyta's latest motion challenging the *same searches* is precluded by the law of the case doctrine." (Gov. Opp'n 4, ECF No. 104)(emphasis added).  This statement is false for two reasons.  First, the instant motion is not "challenging the same searches."  It challenges the search of the vehicle, while the previous motion challenged the search of the house.  Second, and perhaps more importantly, this Court did not "explicitly decide[] the reasonableness" of the search that was the subject of the previous motion.  Rather, the Court found that Mr. Harding-Abeyta lacked standing to challenge the search of the house and, given that finding, it "need not reach the other arguments raised by the parties regarding probable cause." (Ct. Order 11, ECF No. 84).  Notably, the government does not now argue that Mr. Harding-Abeyta lacks standing to challenge the search of the vehicle he was driving on October 7, 2020.

The instant motion is not, as the government claims, "a thinly-veiled motion to reconsider" Mr. Harding-Abeyta's previous motion to dismiss.  (Gov. Opp'n 1, ECF No. 104).  The motion challenges an entirely different search, the reasonableness of which was not previously litigated.  Therefore, the Court should not find this motion to be precluded by the law of the case doctrine.

//

//

## II. The Search of Defendant's Vehicle was Not a Valid Parole Search.

The parties agree that parolees are "subject to search or seizure by a . . . peace officer at any time of the day or night, with our without a search warrant or without cause." Cal. Pen. Code § 3067(b)(3). However, regardless of Mr. Harding-Abeyta's status as a parolee, he was not subject to arbitrary and harassing searches. *See, e.g.*, *People v. Bravo,* 43 Cal.3d 600, 610 (1987); *United States v. Korte,* 918 F.3d 750, 754 n.1 (9th Cir. 2019); *Samson v. California,* 547 U.S. 843, 856-857 (2006); Cal. Pen. Code § 3067(d). "A waiver of Fourth Amendment rights as a condition of probation [or parole] does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons." *Bravo*, 43 Cal.3d at 610. An arbitrary search is defined as one in which the motivation "is unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when the search is motivated by personal animosity toward the parolee." *People v. Reyes,* 19 Cal.4th 743, 754 (1998). The search of Mr. Harding-Abeyta's vehicle on October 7, 2020, was arbitrary and harassing, and as such, the fruits of that search should be suppressed.

The government argues that Mr. Harding-Abeyta's motion "attempts to recharacterize a valid traffic stop as an unlawful parole search. This argument confuses the chronology of events and mischaracterizes the evidence before this Court." (Gov. Opp'n 6-7, ECF No. 104). Contrary to the government's characterization, Mr. Harding-Abeyta is not challenging the validity of the traffic stop. Mr. Harding-Abeyta concedes that Deputy Lopez found a valid reason to initiate the traffic stop, despite not initiating a traffic stop on two other vehicles that crossed in front of his patrol car immediately before Mr. Harding-Abeyta that had similar violations. Deputy Lopez's conduct prior to and during the traffic stop is nonetheless relevant because it is circumstantial evidence of the arbitrary and harassing nature of the subsequent search of Mr. Harding-Abeyta's vehicle.

The dash-cam video from Deputy Lopez's patrol vehicle shows that, less than 60 seconds prior to the "random" traffic stop of Mr. Harding-Abeyta, he was parked just two houses down from 1247 Magazine Street. The video shows Deputy Lopez pulling out suddenly onto Magazine Street in a way that shows a clear intention to turn onto Laurel Street, which he then did. Based

on the video, it is unclear why Deputy Lopez was parked in that location, or why he decided to leave abruptly.  Once Deputy Lopez turns onto Laurel Street, Mr. Harding-Abeyta's vehicle comes into view at the end of the street.  Deputy Lopez continues down Laurel Street towards Mr. Harding-Abeyta.  Based on the dash-cam video, it appears that Deputy Lopez slowed his patrol vehicle and prepared to make a U-turn while Mr. Harding-Abeyta's vehicle is still some distance away.  As soon as Mr. Harding-Abeyta passed Deputy Lopez's vehicle, Deputy Lopez initiates the U-turn and follows Mr. Harding-Abeyta to 1247 Magazine Street.  It is Mr. Harding-Abeyta's contention that this was not a "random" traffic stop, but rather a targeted stop with the intention to initiate an arbitrary and harassing search.

Prior to turning off the audio on their body-worn cameras, deputies can be heard saying that they had been trying to find Mr. Harding-Abeyta.  In Deputy Magazner's footage, one deputy says to another, "You know how we were looking for the dude, Jacob . . . this is him . . . ."  The other officer responded, "Shut up, did you just get that lucky?  Good for you."  The first officer responded, "I'm a 'G' baby."  The government contends that this is evidence that the traffic stop was random, but in doing so, it misconstrues the conversation between the deputies.  Neither deputy stated that they got "lucky."  The reference to "luck" was contained in a question – a question that was never answered.  Rather, the answer to the "lucky" question was, "I'm a 'G' baby."

The government argues that, during the evidentiary hearing on the previous motion to dismiss, Deputy Lopez testified that the traffic stop was a "random car stop," and that Mr. Harding-Abeyta "had his chance to test this and other statements on cross examination and failed to do so."  (Gov. Opp'n 8, ECF No. 104).  However, the traffic stop and subsequent vehicle search were not at issue in that previous motion, and thus questions related thereto were not relevant during the evidentiary hearing.  Thus, Mr. Harding-Abeyta's counsel would have had no reason to challenge that particular part of Deputy Lopez's testimony at that time.

The totality of the circumstances here strongly indicate that this was an arbitrary and harassing search.  The targeted nature of the stop, the deputies' discussion about Mr. Harding-

Abeyta during the search, and their decision to turn off their body-worn cameras during the investigation contrary to department policy together indicate that the search was motivated by personal animosity towards Mr. Harding-Abeyta. The vehicle search was arbitrary and harassing, and thus the fruits of that search should be suppressed.

## CONCLUSION

For the aforementioned reasons, Defendant Jacob Harding-Abeyta respectfully requests this Court to grant the motion to suppress.

DATE:  December 8, 2023              Respectfully submitted,

_____
DANIEL B. OLMOS
Attorney for Defendant
JACOB HARDING-ABEYTA